(121 App. Div. 366.)

TOMPKINS v. J. & R. LAMB.

(Supreme Court, Appellate Division, Third Department. September 26, 1907.)

1. SALES—REMEDIES OF BUYER—BREACH OF CONTRACT.

A purchaser under an executory sale may have an action for breach of the contract as well as for a breach of warranty or upon a rescinded contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1146.]

2. SAME—EVIDENCE—SUFFICIENCY—ACCEPTANCE.

In an action for breach of a contract of sale of a monument, evidence *held* to sustain a verdict that there was no acceptance of the monument,

and that it was rejected within a reasonable time after opportunity to examine, even though the purchase price had been paid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 476.]

3. SAME—PERFORMANCE.

In an action for breach of a contract of sale of a monument to be executed in best Westerly granite, evidence *held* to support a verdict for plaintiff on the ground of nonperformance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 473.]

4. SAME—MEASURE OF DAMAGES.

In case of breach of a contract of sale and rejection of the article purchased for defects, the vendee, having paid the full consideration, is entitled to recover the value of the article contracted for, without regard to the price or the value of the article delivered in fulfillment.

5. NEW TRIAL—GROUNDS—VERDICT—IMPROPER DEDUCTIONS.

Where the jury makes an improper deduction from the verdict given for plaintiff, it is not a ground for awarding a new trial on motion of defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1200.]

Cochrane, J., dissenting.

Appeal from Special Term, Chemung County.

Action by Ray Tompkins against J. & R. Lamb. From an order granting a new trial, plaintiff appeals. Reversed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Herendeen & Mandeville (E. G. Herendeen, of counsel), for appellant.

Spencer, Ordway & Wierum (Otto C. Wierum, Jr., of counsel), for respondent.

SMITH, P. J. In 1902 the plaintiff made a contract with the defendant, by which the defendant's corporation agreed to furnish to the plaintiff a cemetery monument, consisting of a Latin cross resting upon a Calvary of three steps, "to be executed in best Westerly granite as per designs and models seen and approved." By oral contract between the parties, the defendant was to furnish a double headstone, according to a certain design and model, which was to be of the same quality of granite. The contract price of this work was $1,375; $1,025 for the cross, and $350 for the headstone. By the terms of the contract one-half was to be paid when the work was ready for shipment, and the balance when the work was set. On December 29, 1902, on being notified that the goods had been shipped, Mr. Tompkins paid one-half of the purchase price of the cross. On or about January 26, 1903, the work was set in the cemetery at Elmira, and demand was made for the balance remaining unpaid upon the contracts. Upon January 31st the plaintiff wrote to the defendant that he would comply with the wishes of the defendant as soon as he could find time to inspect the work, which would be within a day or two. Upon April 1, 1903, the plaintiff sent his check for the balance due under both contracts. Upon April 29th the plaintiff wrote to the defendant that he had had information that the granite used was not the best Westerly granite, as provided by the contract, but was of an

inferior quality, called the "Troy white granite," and asked for an explanation. The subsequent correspondence between the parties is immaterial, except that thereafter the plaintiff notified the defendant that he rejected the monument and headstone as not in accord with the contract, and that it was subject to its order, and requested the defendant to remove the same. In the complaint in this action the request is repeated; the plaintiff claiming no title thereto.

The complaint seems to have been drawn in a twofold aspect, both for damages for breach of the contract and for a breach of warranty. While the cause of action for the breach of warranty was perhaps more dominantly in the mind of the pleader, nevertheless there are numerous allegations in the complaint which state in explicit terms a cause of action for a breach of the contract. In the eighth paragraph the plaintiff has alleged to have suffered special damages from the breach of said warranty and contract. The learned trial judge submitted the case to the jury as though it were a case for a breach of the contract, although in answer to a request to charge he inadvertently stated that he had charged as for a breach of warranty. Under the charge of the court, however, the jury found that the contract was not performed by the defendant in accordance with its terms; that the property was not accepted and was rejected within a reasonable time after the plaintiff had had opportunity to examine the same, and has found the damage suffered as the value of the monument and headstone contracted for, if the same has been delivered, less the present sale value of the monument and headstone furnished.

Upon a motion for a new trial, the trial judge granted the same, and in the order specified that the same was granted as matter of law, and not in the exercise of discretion. In his opinion accompanying such order he seems to construe the complaint as a complaint upon a rescinded contract, and seems to be of the opinion that plaintiff had only two remedies; an action upon a warranty or as upon a rescinded contract. He then states that in either action the wrong measure of damages was allowed. He further specifies that errors were committed in receiving certain letters sent by plaintiff to the defendant after the contract was made as self-serving declarations.

We cannot agree with the learned trial judge that this is an action upon a rescinded contract, in any event. While there are some dicta in the books which give to a vendee upon an executory sale the choice between two remedies only, either a breach of warranty, if one exist, or an action upon a rescinded contract, the law is well settled that there is a third right of action which such a vendee may have, to wit, an action for a breach of the contract to furnish the property contracted for. In that case the property attempted to be furnished is rejected as not in accordance with the contract. In an action as upon a rescinded contract the vendee can recover only the purchase price paid. In an action, however, as for a breach of contract, the vendee is entitled to recover the value of his contract, which includes not only the purchase price paid, but also the worth of his contract over and beyond such purchase price. In Wells v. Abernethy, 5 Conn. 222, the headnote in part reads:

"Where there is an express agreement open and unrescinded for the breach of which an action is brought, the rule of damages is not the consideration paid, but the value of the thing to be given or the act to be done at the time when, and the place where, it was to be given or done."

The opinion in part reads:

"The consideration of the contract is never the rule of estimating the damages for the breach of an express agreement. When by reason of a failure on the part of one of the contracting parties, or other legal cause, the contract is. rescinded either absolutely or at the election of the party injured, he may bring his suit for the consideration, and then it will be the measure of damages. But so long as the contract is open, and the action, as it necessarily must be, and as in this case it is, is brought upon it, the sum recoverable is the value of the thing stipulated at the time when and the place where it should have been performed."

The allegation in the complaint of the return or offer to return of the article furnished does not stamp the action as one upon a rescinded contract. This offer to return was properly made in rejection of the property furnished. There is not one word in the complaint looking to a rescission of the contract. Further authority in support of the proposition to which the Connecticut case is cited may be found in Freeman v. Clute, 3 Barb. (N. Y.) 424, in which the headnote in part reads:

"It is a general rule that the party complaining of a breach of an executory contract is entitled to indemnity for the loss which the nonperformance of the obligation by the other party has occasioned him, and for the gain of which it has deprived him."

See, also, to the same effect, Taylor v. Saxe, 134 N Y. 67, 31 N. E. 258.

It is strongly urged, however, that there has been in this case an acceptance which precludes the plaintiff from claiming that the contract has not been fulfilled. This offer to return was not made until nearly three months after the monument was set. If the failure to perform the contract had been ascertainable by ordinary inspection, this time might well be deemed to be beyond a reasonable time that the law allows for an inspection and rejection. The quality of granite, however, is something of which the plaintiff had no knowledge whatever. This fact was presumably known to the defendant. The difference between the best Westerly granite and the Troy white granite, of which the monument and headstone were actually made, could only be ascertained by an expert who had dealt in such articles, and even by an expert it was difficult of ascertainment by inspection. One of the expert witnesses upon the stand was unable to distinguish between samples of Troy white and Westerly granite. It would seem that the plaintiff might, without penalty, assume that the defendant had furnished the granite which he had contracted to furnish. Plaintiff's failure within the three months to call in an expert to say whether he had this specific granite contracted for should not, in our judgment, forfeit to him the right to reject the same and demand the performance of the contract made. The difference in the quality of the granite would be in the nature of a concealed defect, a failure to ascertain which at first inspection does not preclude the party, after ascertaining

the fact, from rejecting the property as not in fulfillment of the contract made. Immediately upon ascertaining that the monument was not of the quality of granite contracted for, the plaintiff notified the defendant that he rejected the same. The jury have found that he did so within a reasonable time, and this finding of fact, considering the difficulty in ascertaining wherein the contract was improperly performed, we cannot say is against the weight of evidence. In Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831, the rule is stated in the headnote as follows:

"The vendee has, however, a reasonable time for examination, and what is a reasonable time is generally a question of fact to be determined by a jury upon all the circumstances, including as well the situation and liability of injury to the vendor from delay as the convenience and necessities of the vendee."

In Norton v. Dreyfuss, 106 N. Y. 90, 12 N. E. 428, after a vendee had refused to deliver up the property given in performance of a contract, it was still held to be a question of fact for the jury whether there had been such an acceptance as would preclude the vendee from returning the same and insisting upon a breach of the contract.

In Crane Company v. Collins, 103 App. Div. 480, 93 N. Y. Supp. 174, the headnote in part reads:

"Where articles of a particular description are agreed to be manufactured or sold, and the articles are not of the kind specifically described, a retention of them after the defect can with reasonable diligence be discovered is a waiver of the defect, and no cause of action survives the acceptance and retention of the articles so manufactured, sold, and delivered."

This statement of the principle of law governing the right of rejection will not be challenged by the defendant's attorney. His contention, however, is, first, that the time before rejection was beyond a reasonable time in which the plaintiff should have rejected the monument. Of this, however, we are of opinion that the jury was justified in deciding otherwise. The defendant further contends, however, that, when the monument was delivered, the plaintiff asked time to inspect the same, and had two months' time before the final payment was made. This the defendant contends constitutes an acceptance which should preclude him thereafter from rejecting the monument delivered. The rule is stated in Pierson v. Crooks, supra, as follows:

"The purchaser of goods under an executory contract, where payment and acceptance are by the contract concurrent and dependent obligations, cannot, in the absence of fraud or deceit on the part of the vendor on delivery of the goods, pay the purchase money, and subsequently rescind the contract and reject the goods for defects ascertainable on examination."

To this contention it would seem that the plaintiff might make two answers: First, that payment and acceptance are not by this contract made concurrent obligations. The payment was to be made when the monument was set up. By reason of the nature of the defect and the difficulty of its ascertainment, it is clear that acceptance was not, as matter of law, required to be made during the two months in which payment was delayed. Plaintiff was in default under his contract, and was subject to be sued by the defendant. He might well have been unwilling to risk such action by further delay, notwithstanding he had

not made all of the examination which the law permits him to make. The payment therefore, at the time that it was made, being in pursuance of a legal obligation to pay under any facts of which he was then aware, should not be held to be an acceptance of the defective monument. The plaintiff might further answer the defendant's contention, however, that furnishing him with the monument of Troy white, an inferior granite, knowing presumably that he would be unable to discover wherein he was deceived, was an imposition and fraud upon him which precludes the defendant from asserting that any payment in ignorance of that fraud would operate as an acceptance of the monument. It is doubtful, in the case at bar, whether there is any warranty accompanying this contract. See Staiger v. Soht, 116 App. Div. 874, 102 N. Y. Supp. 342. If the defendant's contention be true that there is no warranty, and that there has been an acceptance of the contract, the law is very inadequate to protect a party from fraud and imposition. Within well-settled principles of law, therefore, the jury might lawfully find that the plaintiff has duly rejected the attempted performance of the contract within a reasonable time, and is entitled to his damages for its nonperformance.

In the opinion of the learned trial judge upon the granting of the new trial, he also states as a ground thereof the reception of certain letters of the plaintiff to the defendant after the making of the contract. Assuming, however, that these letters were incompetent evidence, if properly objected to, they were not objected to as self-serving declarations, and, moreover, they are only declarations of facts which are substantially admitted upon the trial of this action. No question is made that this granite of which this monument and this headstone were made was Troy white. While it is claimed that some of these other granites sometimes went by the name of Westerly granite, the evidence is very far from sustaining such a claim, and, even, if it were true, there is no evidence that the Troy white granite is the best Westerly granite. The fact appears that the granite from Westerly, R. I., is harder and more costly than the Troy white. The action stands, therefore, with the contract almost confessedly unfulfilled. The monument and headstone have been rejected by the plaintiff, and they are now the property of the defendant. The plaintiff, having paid the full consideration of the contract, is entitled to recover the full value of the monument and headstone in the best white Westerly granite. While a deduction from that sum was allowed by the court of the value of the monument and headstone now found in this action, such reduction of damages was not proper. The error, however, has been prejudicial to the plaintiff, and not to the defendant. We see no reason, therefore, why the verdict of the jury should have been set aside.

If we are right in these views, it is unnecessary to consider whether there was in fact a warranty in this case, and as to what would be the proper measure of damages in case of a breach of warranty. The question was so submitted to the jury that they have found all the facts necessary to sustain a verdict as in an action upon a breach of the contract. We think, therefore, that the order granting a new trial should be reversed, with costs, and the motion denied with costs.

Order reversed, with costs, and motion denied, with costs. All concur, except COCHRANE, J., dissenting in opinion.

COCHRANE, J. (dissenting). The written contract for the amount provided: "No payment in advance. One-half when the work is ready for shipment. Balance when the work is set." The contract for the headstone was oral, and nothing was said as to the time of payment. As to both contracts therefore, except as to the first payment on account of the monument, payment was to be made on completion of the work. It would seem that, under such contracts, there is implied a reasonable opportunity when practicable for the purchaser to assure himself before payment that the work corresponds to the contract. While the plaintiff personally was unfamiliar with the different kinds of granite, and was unable to distinguish between Westerly granite and Troy granite, the difference as appears from the record is clearly apparent and discernible to one familiar with granites. The defect complained of was not a latent, concealed defect, in the sense that it could not be ascertained save by subsequent use or wear. In January, 1903, the material was received on plaintiff's cemetery lot. January 26th defendant wrote to plaintiff that the work was completed, and asking for a remittance of the balance due. January 31st plaintiff replied: "I will comply with your wishes as expressed in your letter of the 26th as soon as I can find time to inspect the work, which will be within a day or two." Nothing further occurred until April 1st, when plaintiff unreservedly sent a check in full payment, having made no complaint or suggestion in the meantime that the work was not according to contract. I think these facts must be deemed to have constituted an acceptance by the plaintiff, and that he was not thereafter at liberty to change his mind or repudiate the contract.

In McCormick v. Sarson, 45 N. Y. 265, 6 Am. Rep. 80, it is said:

"If he accept it after examination, or after an opportunity for examination, as fulfilling the contract, he is bound by such action. This rule is well settled. Reed v. Randall, 29 N. Y. 358, 86 Am. Dec. 305; Gillespie v. Torrance, 25 N. Y. 306, 82 Am. Dec. 355; Hargous v. Stone, 1 Seld. (N. Y.) 73; Sprague v. Blake, 20 Wend. (N. Y.) 61; Hart v. Wright, 17 Wend. (N. Y.) 267, 277; Welsh v. Carter, 1 Wend. (N. Y.) 185, 19 Am. Dec. 473; Swett v. Colgate, 20 Johns. (N. Y.) 196, 11 Am. Dec. 266. This is the rule in the absence of any fraud or warranty."

In Crane Company v. Collins, 103 App. Div. 480, 93 N. Y. Supp. 174, it is said:

"Undoubtedly, the rule is that, where articles of a particular description are agreed to be manufactured or sold, and the articles are not of the kind specifically described, a retention of them after the defect could with reasonable diligence have been discovered is a waiver of the defect, and no cause of action survives the acceptance and retention of the articles so manufactured, sold, and delivered."

Plaintiff took his time to make an inspection and to satisfy himself that the work was satisfactory. Surely it cannot be said that he needed even a small portion of the intervening time between the receipt of the granite and his payment therefor. It seems to have required but a few minutes of casual and superficial inspection by the granite dealers whom he called as witnesses to determine beyond the peradventure of

a doubt the exact source and quality of the granite. Defendant complied with the plaintiff's expressed wish for an opportunity of inspection. He had the opportunity, and, if he failed to avail himself thereof, it was because he was satisfied to forego the privilege or right and accept and pay for the work without availing himself thereof.

In Pierson v. Crooks, 115 N. Y. 552, 22 N. E. 353, 12 Am. St. Rep. 831, it is said:

"The purchaser of goods under an executory contract, where payment and acceptance are, by the contract, concurrent and dependent obligations, cannot, on the delivery of the goods, pay the purchase money, and subsequently rescind the contract and reject the goods for defects ascertainable on examination. It would be inconsistent with the nature of the transaction and the admission which the payment implies to permit him to do so in the absence of fraud or deceit on the part of the vendor. Brown v. Foster, 108 N. Y. 387, 15 N. E. 608. In such case the purchaser must satisfy himself, before making payment, that the goods tendered correspond with the contract."

In that case the vendee was permitted to recover for payment because the contract in effect provided for "a payment in advance of delivery." In the present case the contract expressly provides "no payment in advance." Even if the contract did not permit plaintiff to sufficiently examine the property before payment, he expressly exacted such privilege in his letter of January 31st, which seems to have been complied with by defendant. Plaintiff took all the time he desired, and much more time than he needed, to satisfy himself of the fulfillment of the contract, and, having thus satisfied himself, he accepted and paid for the property. It was thereafter too late for him to change his mind, even though, as a matter of fact, sufficient grounds for the rejection of the property existed, had such right of rejection been promptly and properly exercised.

The learned counsel for the plaintiff seeks to sustain the verdict on the theory of a breach of warranty clearly alleged in the complaint. On such theory an improper measure of damages was adopted, as stated by the learned trial justice, who for that reason properly granted a new trial.