Argued June 4, affirmed August 14, 1962

# CITY OF PORTLAND *v.* RUGGERO

373 P. 2d 970

*C. X. Bollenback*, Portland, argued the cause for appellant. With him on the brief was LeRoy L. Lomax.

*A. Allan Franzke*, Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, and James A. Larpenteur, Jr.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

LUSK, J.

This is a condemnation action brought by the city of Portland, acting by and through the Portland Development Commission, under the authority of ORS Chapter 457, to acquire property by eminent domain in order to carry out an urban renewal project. The trial was before the court without a jury. The court entered findings of fact, conclusions of law, and a judgment by which it found that the fair market value of the real property taken on the date of the filing of the complaint was $21,000 and that said sum is the just compensation to be paid to the defendant Filomena Ruggero, the owner of the property (hereinafter referred to as the defendant); that the amount of the final offer made by the plaintiff to the defendant was a sum in excess of the amount found to be due as just compensation to her; and that the defendant was not entitled to recover an attorney's fee or costs and disbursements.

The defendant filed objections to the findings as follows:

"1. Objects to the entry of the judgment tendered herein by the plaintiff on the ground that said tendered judgment contains a purported

finding of fact contrary to the evidence that the subject property in this action had a fair market value of $21,000.00 at the time of the filing of the complaint herein and that such sum is just compensation to the defendant,

"2. Objects to the entry of any other judgment herein, on the ground that the Court as trier of the facts has formed its opinion contrary to the evidence,".

The defendant has appealed from the judgment.

There is one assignment of error, which reads:

"The Court erred in disregarding the evidence introduced and basing its decision on personal observation and speculation."

The judge viewed the premises and rendered a decision in writing, which reads:

"The expert appraisers seem to be generally agreed that there is a fifteen year life remaining in the building, and that to some extent, at least, there seems to be an idea that the upstairs rooms would be acceptable to rent out for rooms. The Court observed this property, and saw the following defects which make the Court believe that the building ought to be condemned at the present time so far as rentals are concerned:

"The large upstairs back porch decking is so rotten that at the sills rotten holes show through. The sills are on such wide centers that a person walking across this floor is in danger of falling through and suffering serious injury. The cement foundation exterior on the east side shows it was built by pouring cement around timbers onto which sheathing was nailed, and which still form a part of the otherwise cement walls. They have rotted away to such an extent that they cause a viewer to wonder if the foundation at this point, which is actually about ten feet high, might completely collapse. The floors throughout the entire structure tremble under the ordinary human step. The only

bathroom in the building appears to be located in the extreme southeast corner of the upstairs. The southeast corner of this bathroom has sagged at least four or five inches lower than the northwest corner of the same room. In the basement it appears that at least one supporting timber is only toenailed into another at its inside terminal and is resting as much on the plumbing as any upright pieces.

"How the appraisers can attribute a fifteen year life to such a structure this Court cannot understand. Therefore, the Court is largely disregarding their testimony concerning the value of the building, although it does recognize there is some life and rental value in the tavern portion of the building. However, the Court does not overlook the fact that the routing of traffic and the slope of the hill at the corner upon which this building is located leave a definite possibility that an automobile or a truck involved in a collision, or even losing its brakes might roll into this building. Such a collision would definitely endanger collapse of the building.

"The Court does allow $15,000.00 for the property on an approximate $5.00 per square foot basis, $4000.00 for the fixtures, and will allow $2000.00 on the building, bad as it is, for a total of $21,000.00, which total is allowed as just compensation for the property."

The property involved is included in what is known as the South Auditorium Urban Renewal Project in the city of Portland. It is a rectangular parcel 50 x 60 feet plus a small parcel 6 x 16 feet. On it was a building comprising living quarters and a "business unit" used as a beer tavern.

All the evidence was given by three appraisers, Arvin A. Burnett and Harry W. Stepp for the plaintiff

and Paul R. Lusk for the defendant. Their valuations were as follows:

Mr. Burnett:

| | |
|---|---:|
| Land and building, | $18,000 |
| Fixtures, | 4,000 |
| **Total,** | $22,000 |

Mr. Stepp:

| | |
|---|---:|
| Total value, | $21,500 |

Mr. Lusk:

| | |
|---|---:|
| Land, | $13,905 |
| Building, | 10,945 |
| Fixtures, | 2,500 |
| **Total,** | $27,350 |

Mr. Lusk estimated the economic life of the building at fifteen years; Mr. Burnett and Mr. Stepp thought this was reasonable.

Mr. Lusk based his opinion as to the value of the building on the net income therefrom over a period of fifteen years.

Mr. Burnett and Mr. Stepp both used the "income approach" in arriving at their valuations. The former testified that a reasonable income from the real property was $1,700 per year and that a willing buyer would wish the return of his money without interest in ten years. Thus, he fixed the value of the property at $17,000 and added to this $1,000 which a willing buyer would be willing to pay. Mr. Stepp thought the reasonable estimated income was $2,340 per year, but used the term of nine years for the return of investment without interest, thus producing a figure which he "rounded" to $21,500.

Mr. Lusk and Mr. Burnett also testified as to the value of the bare land. The former appraised this value at $4.50 per square foot, giving a total of $13,905 for 3,090 square feet, while Mr. Burnett estimated the value of the bare land at $3 per square foot.

As the memorandum opinion of the judge shows, his valuations were as follows:

| | |
|---|---|
| Bare land on an approximate valuation of $5 per square foot, | $15,000 |
| Building, | 2,000 |
| Fixtures, | 4,000 |
| Total, | $21,000 |

The defendant contends that the court's finding that the fair market value of the property was $21,000 is contrary to the evidence, because the lowest valuation testified to by any of the witnesses was $21,500. But, even assuming that the court was bound by the opinions of the experts in the sense that it must keep its judgment within the range of the valuations to which they testified, the court's finding is still supported by the evidence. The property consisted of land, a building, and fixtures. Mr. Lusk valued the land and building at $24,850 and the fixtures at $2,500. Mr. Burnett valued the land and building at $18,000 and the fixtures at $4,000. It was entirely competent for the court to enter a judgment based upon Mr. Lusk's value of the fixtures and Mr. Burnett's value of the land and building. This would be $20,500, a figure lower than the lowest given by any of the witnesses for the property as a whole, but still within the range of the opinion evidence.

■ It is not the rule, however, that the trier of the facts is bound by the opinion evidence of experts, even though it be uncontradicted. As we said in *Paine v. Meier & Frank Co.,* 146 Or 40, 44, 27 P2d 315, 29 P2d 531:

> "The probative weight to be accorded to the estimates of witnesses as to rental value and depreciation was a matter entirely for the jury."

See, also, *Hasbrook v. Lynch,* 146 Or 363, 365, 30 P2d 358. As stated in *Avins v. Commonwealth,* 379 Pa 202, 206, 108 A2d 788, a case cited by the defendant, "Expert testimony from its very nature is not proof of a fact. It is never more than opinion." The decision in *McIntosh Livestock Co. v. Buffington,* 108 Or 358, 367, 217 P 635, is not inconsistent with the later cases above cited, for in that case the verdict of the jury assessing the value of sheep in a replevin action, which the court found to be "an arbitrary and unauthorized compromise", was contrary, not only to the evidence, but to the pleadings as well. See *Tou Velle v. Farm Bureau Co-op. Exchange,* 112 Or 476, 229 P 83, 1103.

■ The judgment is not subject to attack merely because it did not in all respects agree with the opinions of the appraisers.

■ The only really arguable question in the case is whether the judgment is defective because, as the defendant contends, the court treated as evidence its view of the premises, contrary to the accepted rule in this state that the view is not evidence and that its only purpose is to enable the trier of the facts, whether jury or judge, "to better comprehend the evidence adduced upon the trial and to apply the testimony and evidence given to the issues before it." *State Highway Com. v. Sauers et ux.,* 199 Or 417, 419, 262 P2d 678.

■ Since, as we have seen, the findings and judgment do have support in the evidence, it may be questioned whether what the judge said in his memorandum is relevant on review. Assuming, however, that it may be considered on the question whether the findings were the result of an unauthorized judicial method and, if so, whether the judgment for that reason should be set aside, we are of the opinion that the position of the defendant is untenable, because the memorandum does not, taken by its four corners, disclose a violation of the rule that the view is not evidence; but rather that the judge in the discharge of his duty to apply the testimony to the issues before him, with the aid of his personal observation of the property under consideration, *State Highway Com. v. Burk et al,* 200 Or 211, 265 P2d 783, arrived at a different conclusion as to the probable life of the building than the three witness-appraisers. That this was within his judicial competence we think cannot be doubted. This is not a case, it should be noted, where an essential part of the proof is attempted to be supplied by a jury view of the premises. See *York v. Southern Pac. Co.,* 87 Or 695, 701, 170 P 927, 171 P 567.

We find no error and the judgment is affirmed.